# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
March 8, 2016 Session

## JILL ST. JOHN-PARKER v. VIRGIL DUANE PARKER

**Appeal from the Circuit Court for Bradley County**
**No. V12473     Lawrence Howard Puckett, Judge**

_____

**No. E2014-01338-COA-R3-CV**
**FILED-MAY 17, 2016**

_____

In this divorce, the trial court's main challenge was to classify and divide corporate debentures worth over two million dollars. After considering the evidence, the trial court classified all of the debentures as marital property and awarded Wife a share equal to $450,000. After this Court granted Husband's motion to stay execution on distribution of the assets, the trial court awarded Wife temporary alimony. We have concluded that the trial court erred in its division of the debentures and in awarding attorney fees to Wife for her attorney's work regarding Husband's motion to stay execution. In all other respects, we affirm the trial court's decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Vacated in Part, and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

Donald Capparella, Nashville, Tennessee, for the appellant, Virgil Duane Parker.

Randall D. Larramore, Oak Ridge, Tennessee, for the appellee, Jill St. John-Parker.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

Jill St. John-Parker ("Wife") and Virgil Duane Parker ("Husband") married in 1990 and had one child, who is now over the age of eighteen. Husband obtained a law

degree and Wife became a certified public accountant. In 2002, Husband and Wife moved from Maryland to Cleveland, Tennessee. Wife filed for divorce in June 2012 and husband answered and counterclaimed. Numerous motions and orders followed. This case has a long and complicated history, but the issues on appeal do not require us to go through all of that history. We will set forth the pertinent facts below as relevant to each issue.

The case was tried over seven days in October 2013. The court heard testimony from witnesses including Husband, Wife, Christy Holden Petty (Administrative Vice President of Pioneer Credit Company), Daniel Peterson (CPA, expert witness for Wife), and Randall Hebert (CPA, expert witness for Husband). The primary assets at issue in this litigation are corporate debentures[1] held by Pioneer Credit Company in Cleveland; therefore, much of the proof addressed the proper classification and value of the debentures.

In a final decree entered on March 26, 2014, the trial court ruled, in pertinent part, that the parties were divorced, that Wife was awarded the marital home, and that Husband was responsible for the home equity line of credit on the marital home. With respect to the corporate debentures, the court ordered as follows:

> 7. . . .
> (a) Plaintiff is awarded a share of the Pioneer debentures equal to $450,000;
> (b) Defendant is awarded the remaining value of the debentures;
> (c) The parties are directed to approach Pioneer Credit jointly to seek a $450,000 division of a 12% debenture with an effective date of division of October 22, 2013. Should Pioneer Credit refuse to honor the request, the Court will take the matter under further consideration.
> 8. From January, 2013, through October, 2013, the total sum of $133,890 was withdrawn from a debenture (identified at trial as both debenture # 14a and # 17) and was deposited in a bank account, and Plaintiff is awarded 50% of the total amount of those withdrawals, or $66,945, which shall be paid to her within ten (10) days of October 22, 2013, in addition to the share of the debentures awarded to Plaintiff above.

The court incorporated by reference into this final judgment the memorandum opinion delivered in court on October 22, 2013, and made this order a final judgment subject to appeal pursuant to Tenn. R. Civ. P. 54.02. The trial court's memorandum opinion fleshes

---

[1] A debenture is "[a] bond that is backed only by the general credit and financial reputation of the corporate issuer, not by a lien on corporate assets." BLACK'S LAW DICTIONARY (10th ed. 2014).

out the reasoning behind some of the rulings set forth in its March 26, 2014 order; we will discuss that reasoning as pertinent to our analysis of the issues on appeal. Husband filed a notice of appeal on July 14, 2014.

The parties continued to litigate in the trial court after the court issued its final judgment. On September 4, 2014, Husband filed a motion to stay further proceedings for the distribution of assets pending the appeal. On October 6, 2014, Wife filed a motion to convert the court's award of marital property to her from a debenture to a cash payment. She asserted that, "Despite her diligent efforts, [Wife] has been unable to secure cooperation from [Husband] or from Pioneer Credit to split the debenture." The parties filed competing orders reflecting disagreement over the appropriate amount of the lump sum, and the court entered both proposed orders. Husband objected to Wife's proposed judgment, and Wife filed a motion to alter or amend the trial court's order adopting Husband's proposed judgment. (In an order filed in June 2015, the trial court vacated the portion of the November 2014 order including Husband's proposed judgment.) Wife sought to use the garnishment process to gain access to the money held by Pioneer Credit. The trial court denied Husband's motion for a stay of the judgment pending appeal at a hearing on October 7, 2014.

On March 6, 2015, the trial court heard Pioneer Credit's motion to quash a subpoena and for a protective order and Wife's motion to compel payment of funds pursuant to garnishment. The trial court ordered that these motions be passed, that Pioneer Credit hold the garnishment amount of $515,644.18 pending further orders of the court, and that no interest accrue. Pioneer Credit was further ordered not to pay the garnishment amount into the registry of the court. Wife filed a motion to alter or amend the court's March 6 order to provide that statutory interest continue to accrue. (In a June 2015 order, the trial court clarified that statutory interest on the judgment continued to accrue from the date of the judgment.)

On April 16, 2015, this Court granted Husband's motion for review of the trial court's order denying his motion for a stay of execution on the judgment pending appeal.[2] This Court stayed execution on the judgment "with regard to all remaining funds held by Pioneer Credit which are at issue in these proceedings." The stay was conditioned upon the filing of a bond, and the case was remanded to the trial court for the determination of an appropriate bond. The trial court set bond in the amount of $542,000.29 ($504,706.98 plus statutory interest for one year from the date of garnishment) in an order entered on May 6, 2015. Pioneer Credit tendered the bond amount to the circuit court clerk on May 8, 2015.

---

[2] The record reflects that Husband had filed two previous motions in this Court seeking review of the trial court's denial of his motion for a stay of execution on the judgment. Both motions were denied for failure to comply with Tenn. R. App. P. 7.

On May 14, 2015, Wife filed a motion for temporary alimony. She argued that, "As a result of the stay, [Wife] is unable to execute on and to secure the liquid funds which she needs to provide for her daily living and the maintenance of her real property." She requested an award of temporary alimony until she was able to secure the judgment awarded to her by the trial court. On June 23, 2015, the trial court entered an order resolving a number of pending motions, including Wife's motion for temporary alimony. The court granted Wife's request for temporary alimony and ordered Husband to pay her $3,000 per month, retroactive to the date of the divorce. This created an arrearage of $60,000.00.

ISSUES ON APPEAL

Husband argues that (1) the trial court erred by adopting Wife's expert's testimony without properly considering the weight that testimony should be given; (2) the trial court erroneously classified as marital property corporate debentures that are Husband's separate property; and (3) the trial court abused its discretion by awarding unnecessary alimony. Wife makes the additional arguments that (1) the trial court failed to award her an equitable portion of the marital estate, and (2) that the trial court failed to give proper consideration to Husband's separate estate in making its division of marital property.

ANALYSIS

Expert testimony

Although Husband's argument concerning the expert testimony of Mr. Peterson is stated in broad terms, the issue addressed in his brief is a narrow one: Husband asserts that the trial court erred in denying his Rule 60 motion requesting that the trial court reconsider its judgment in light of new facts concerning Wife's relationship with Mr. Peterson.[3] We review a trial court's decision on a Rule 60 motion under an abuse of discretion standard. *J & B Invs., LLC v. Surti*, 258 S.W.3d 127, 132 (Tenn. Ct. App. 2007). Under the deferential abuse of discretion standard, we must review a trial court's discretionary decision to determine:

(1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the [trial] court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the [trial] court's decision was within the range of acceptable alternative dispositions.

---

[3] Contrary to the statement in Husband's brief, Husband did not object to Mr. Peterson testifying as an expert at trial.

*Lee Med., Inc. v. Beecher,* 312 S.W.3d 515, 524 (Tenn. 2010); *see also Flautt & Mann v. Council of City of Memphis,* 285 S.W.3d 856, 872-73 (Tenn. Ct. App. 2008) (quoting *BIF, a Div. of Gen. Signal Controls, Inc. v. Serv. Constr. Co., Inc.,* No. 87-136-II, 1988 WL 72409, at *3 (Tenn. Ct. App. July 13, 1988)). The trial court's decision "'will be upheld "so long as reasonable minds can disagree as to the propriety of the decision [of the trial court].'" *Riley v. Whybrew*, 185 S.W.3d 393, 399 (Tenn. Ct. App. 2005) (quoting *State v. Scott,* 33 S.W.3d 746, 751 (Tenn. 2000)).

On October 6, 2014, almost a year after the trial, Husband filed a motion for relief from the judgment under Tenn. R. Civ. P. 60.02 "for fraud upon the court by misrepresentation or other misconduct of [Wife]." In support of this motion, Husband alleged, in pertinent part:

> 1. The Defendant has learned that the employer of Plaintiff, Daniel E. Peterson, C.P.A., was involved in a romantic relationship with Plaintiff during these proceedings and, as a result of the involvement of Daniel E. Peterson with the Plaintiff in this action, the wife of said Peterson has filed a Complaint for Divorce with the Circuit Court for Bradley County, Tennessee, Docket No. V-14-465. A copy of the complaint is attached as Exhibit A.[4]
> . . .
> 3. It is apparent that the Plaintiff's romantic involvement with her employer clouded his judgment and represents a clear violation of the Tennessee Rules of Professional Conduct for Certified Public Accountants, as enumerated in Chapter 0020-03-03, et seq. It is incumbent upon the Licensee to maintain objectivity and integrity and to be free of any undisclosed conflicts of interest and said licensee shall not misrepresent facts or subordinate his or her judgment to others. . . .
> 4. Defendant alleges that the conduct of the said Daniel E. Peterson is in contravention of the law and his professional obligations, and as a result thereof, his testimony as a qualified expert on Plaintiff's behalf should be disqualified and dismissed by the court.
> 5. . . . Had the improper relationship between Peterson and the Plaintiff been disclosed, grounds would have existed for the disqualification of the witness, or at a minimum, the Trial Court would have been able to better assess the credibility of the expert witness.

Husband requested an evidentiary hearing on this matter.

---

[4] The complaint does not allege adultery or mention Ms. Parker.

Husband's Rule 60 motion was heard on October 7, 2014. The trial court noted that it was aware that Mr. Peterson was Wife's employer and questioned why "a more familiar relationship" would disqualify him. The trial court further stated:

> I have credibility issues with . . . this case, so I can agree with—that that could have been something somebody could have maybe brought up, but I don't see how it has—any reason why it would affect the judgment of this Court. I don't think I based my decision on . . . that one witness . . . .

Because the trial court concluded that the evidence alleged by Husband would not have affected its decision, the court declined to reopen the proof to hear more evidence.[5] Thus, the trial court denied Husband's motion for Rule 60.02 relief.

In asserting that the trial court erred, Husband states that the alleged romantic relationship between Mr. Peterson and Wife "would have created a direct conflict of interest, which goes to the overall weight that Peterson's testimony should have been given." It must be emphasized, as the trial court stated in denying the motion, that the court had "credibility issues" in this case. In its memorandum opinion, the trial court made specific findings regarding Husband's lack of credibility:

> I accept the testimony and the proof that shows at a time [Husband] represented to the Tennessee Supreme Court that he had voluntarily suspended his law license, he still was earning money from practicing law, which I don't think they would like. He knows he needs to have an IOLTA account. He does not have one. The Supreme Court would not like that, I do not believe. . . .
>
> The specific finding of the Court of Appeals in Maryland was under MRCP 8.4B, C and D. They did not find it to be criminal under B. . . . They found it to be C, that he had engaged in conduct involving dishonesty, fraud, deceit and misrepresentation and also D, he engaged in conduct that is prejudicial to the administration of justice.

The trial court specifically stated in its decision to deny Husband's motion to set aside the judgment that credibility was a factor.

Moreover, the cases Husband cites do not support his position that the alleged evidence would necessitate a finding of a direct conflict of interest and reevaluation of the evidence. Our Supreme Court, in *Mabry v. Board of Professional Responsibility of*

---

[5] Wife "vehemently denied" the allegations made by Husband in his Rule 60 motion.

*the Supreme Court*, 458 S.W.3d 900, 909 (Tenn. 2014), found that the trial court had not abused its discretion in refusing to allow a defendant/attorney to testify as an expert in his own disciplinary proceedings because his knowledge about the disciplinary process would not have "substantially assisted" the trial judge, as required by Tenn. R. Evid. 702. Further, the Court found that "his unmistakable bias as to the validity of his own disciplinary proceedings 'indicates a lack of trustworthiness' that provides additional grounds for excluding his opinion testimony" pursuant to Tenn. R. Evid 703. *Mabry*, S.W.3d at 909. *Mabry* is distinguishable from the present case on its facts because *Mabry* involved a party's attempt to testify as an expert. In *Cole v. Reader's Digest Sales & Services, Inc.*, 139 Fed. Appx. 707, 708 (6th Cir. 2005), the court stated, "Nothing . . . in Fed. R. Evid. 702 disqualifies an individual from serving as an expert by virtue of his or her relationship to the plaintiff." Rather, "[s]uch a conflict of interest goes to the weight of the evidence, not its admissibility." *Cole*, 139 Fed. Appx. at 708. Thus, even if there were a conflict of interest, the trial court could still rely upon Mr. Peterson's testimony, and the trial court in this case expressly found that the knowledge of a romantic relationship between Mr. Peterson and Wife would not have changed the outcome.

We have concluded that the trial court did not abuse its discretion in denying Husband's Rule 60 motion.

Debentures

(1) Classification

The most complex issues in this case involve the corporate debentures issued by Pioneer Credit beginning in 1992. Husband asserts that the trial court erred in classifying his separate property (certain debentures) as marital property. There are three debentures at issue in this litigation: Debenture #7, Debenture #8, and Debenture #14A/17. Husband takes the position that only a portion of Debenture #7 (22% of the total value of the debentures) belongs to the marital estate. Wife takes the position that all of the debentures are marital property.

The determination as to whether property is marital or separate is "inherently factual." *McFarland v. McFarland*, No. M2005-01260-COA-R3-CV, 2007 WL 2254576, at *4 (Tenn. Ct. App. Aug. 6, 2007). Thus, we review the trial court's classification of property "de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." TENN. R. APP. P. 13(d). The trial court is in the best position to determine a witness's credibility. *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999). We will not reevaluate a trial court's assessment of a witness's credibility in the absence of clear and convincing contrary evidence. *Id.*

Tennessee Code Annotated Section 36-4-121(b)(2) defines "separate property" as:
(A) All real and personal property owned by a spouse before marriage, including, but not limited to, assets held in individual retirement accounts (IRAs) as that term is defined in the Internal Revenue Code of 1986, compiled in 26 U.S.C., as amended;
(B) Property acquired in exchange for property acquired before the marriage;
(C) Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1);
(D) Property acquired by a spouse at any time by gift, bequest, devise or descent;
(E) Pain and suffering awards, victim of crime compensation awards, future medical expenses, and future lost wages; and
(F) Property acquired by a spouse after an order of legal separation where the court has made a final disposition of property.

Marital property is defined as "all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce . . . ." Tenn. Code Ann. § 36-4-121(b)(1)(A).

Husband first makes the argument that the trial court erroneously classified the debentures based upon the parties' tax treatment of these assets: 71% as marital property and the rest as Husband's separate property. This argument fails because it is based upon a misreading of the trial court's decision. The trial court expressly stated in its order: "The corporate debentures held by Pioneer Credit and all accumulated interest pertaining thereto are determined to be marital property . . . ." The court's language pertaining to Husband's tax returns, quoted by Husband in his brief, references the "equities" considered by the court in determining how to *divide* the marital property:

Having called it marital property . . . I'm going to go ahead and count into the equities the fact that—and I'm going to hold Mr. Parker to his tax returns that he filed and say that the amount of money that can be identified as family money in this matter—and I understand that he could own it separately and hold it in his name alone and pay taxes on it. I understand that. But if you take those tax returns . . . and the way he treated it at that time, we're talking about Norma Parker only paying less than 35 percent tax or tax on less than 35 percent of the total interest from those debentures. . . . I'm going to divide the remainder of it, which is 71 percent or more than 71 percent 50/50.

Based upon this reasoning (discussed below), the trial court decided to award each party one-half of 71% of the debentures; the remainder would go to Husband. The trial court did not rely upon the parties' tax treatment in its *classification* of the debentures as marital.

Husband next asserts that the trial court "erroneously included property belonging to Husband's Parents' estate in the classification analysis." He argues that 22% of the debenture funds belong to the marital estate and the rest belonged to his mother until her death in August 2012, two months after Wife filed for divorce. He further asserts that these funds became his separate property upon his mother's death. Husband argues that the trial court "erred when it treated property belonging to NDP [his mother] (and VCP [his father], prior to his death in 1999) as Husband's separate property for purposes of the classification analysis." He references the tables found in his statement of the facts as containing "a summary of which of the deposits/withdrawals belonged to each estate at the time they were made, as supported by the record."

Detailing the history of the debentures and the numerous deposits and withdrawals would be an arduous task and, ultimately, would not be useful because there is little objective evidence in the record concerning the ownership of the various debentures. Rather, the court had to depend on the expert testimony and the testimony of the parties to classify the debentures. Both parties introduced expert proof tracing the flow of money through the debentures and testimony as to whether various sums should be considered the property of Husband's parents or marital property.

Husband began investing money in debentures at Pioneer Credit in 1992, after the parties' marriage. He was the only party to have direct contact with Pioneer Credit, and he created debentures using various designations—in trust for one or both of his parents or in trust for himself with or without Wife. Ms. Petty, the administrative vice president who handled debentures, testified that she never met Virgil Parker, Husband's father, and that it was Husband who created the original debenture and who made changes in the titles of the debentures. According to Wife's testimony, Debenture #7 was originally titled to Husband, trustee, with his Social Security number; by October 2012,[6] however, the debenture had been retitled to the Virgil Parker Trust, Husband, trustee, with Norma Parker's[7] Social Security number. Debenture #8 was originally titled to the Virgil C. Parker Trust, Husband, trustee, with Norma Parker's Social Security number; by October 2012 it had been retitled simply to Husband, trustee, with Husband's Social Security

---

[6] Husband filed interrogatory responses on October 12, 2012.

[7] Norma Parker was Husband's mother.

number. Debenture #14A/17, according to Wife's testimony, was originally titled to Husband, trustee, with his Social Security number, but the Social Security number was changed to his deceased mother's Social Security number by October 2012.

As an example of the type of evidence available to the trial court, we will consider evidence concerning funds in Debenture #7. Debenture #2 and Debenture #5/6 would later be combined into Debenture #7. Husband opened Debenture #2 in December 1992 with a deposit of $82,000. No objective evidence was introduced concerning the source of the funds. Husband deposited an additional $20,000 in February 1993, for which there was no identifiable source. In August of 1993, a deposit of $28,000 was made into Debenture #2 from the parties' joint checking account. In June 1994, a deposit of $100,000 was made into the newly created Debenture 5/6 from the parties' joint checking account. Husband's expert, Mr. Hebert, classified all four of these deposits as parent money, based partly upon a marital means test he performed to evaluate whether the parties had enough cash flow to make the deposits. With regard to the checks, Mr. Hebert testified that he relied upon Husband's information in classifying the deposits as belonging to Husband's parents. Mr. Hebert stated that he would believe what Husband said regarding the deposits. Mr. Peterson, Wife's expert, classified each of these deposits as marital. As to the funds with no identifiable source, Mr. Peterson reasoned that they were acquired during the marriage and there was no evidence to show they were not marital. With regard to the funds evidenced by checks, Mr. Peterson reasoned that funds from a joint marital checking account are marital.

Assets acquired by either spouse during the marriage are presumed to be marital property. Tenn. Code Ann. § 36-4-121(b)(1)(A); *Church v. Church*, No. M2004-02702-COA-R3-CV, 2006 WL 2168271, at *7 (Tenn. Ct. App. Aug. 1, 2006). Thus, classification of all assets acquired by either spouse during the marriage begins with the presumption that they are marital. *Fox v. Fox*, No. M2004-02616-COA-R3-CV, 2006 WL 2535407, at *4 (Tenn. Ct. App. Sept. 1, 2006). A party asserting that assets acquired during the marriage are separate property has the burden of proving by a preponderance of the evidence that the assets are separate property. *Owens v. Owens*, 241 S.W.3d 478, 485-86 (Tenn. Ct. App. 2007). Thus, when there was no evidence as to the source of the funds deposited by Husband, the presumption was that they were marital, unless the preponderance of the evidence was otherwise.

Moreover, classification of the debentures as marital or separate property requires an assessment of the parties' credibility. In many instances, the only available evidence concerning the source of money was Husband's testimony. Thus, credibility was a key issue. The trial court noted that Husband lacked credibility, particularly with respect to financial dealings. He was disbarred in Maryland and disciplined by the Board of Professional Responsibility in Tennessee for "dishonesty, fraud, deceit and misrepresentation." The trial court also took note of Husband's "basic propensity for

sharp dealing or dishonest dealing in regard to signing [Wife's] name to documents that she did not know about," listing a false address for his son's school, and inappropriate tax filings.[8]

The trial court elected to credit the testimony of Wife's expert, and there is no clear and convincing evidence that contradicts the trial court's decision to credit Mr. Peterson's testimony as credible. Contrary to Husband's argument, Mr. Peterson considered some of the debentures to be the property of Husband's parents, not Husband's separate property, in the early years. Mr. Peterson's ultimate conclusion, however, was that, as of October 2013, all of the debentures were marital property. We do not find that the evidence preponderates against this conclusion.

(2) Equitable division

Wife asserts that the trial court failed to award her an equitable share of the marital estate. In particular, Wife argues that, after finding that all of the debentures were marital property, the trial court erred in dividing the debentures based on the parties' interest assignments from their tax returns.

After classifying the property of a divorcing couple, a trial court is charged with equitably dividing the marital property. Tenn. Code Ann. § 36-4-121(a); *Jolly v. Jolly*, 130 S.W.3d 783, 785 (Tenn. 2004). An equitable division of property "is not necessarily an equal one." *Batson v. Batson*, 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988). "A division of marital property is not rendered inequitable simply because it is not precisely equal, or because each party did not receive a share of every piece of marital property." *Owens*, 241 S.W.3d at 490 (citations omitted). A trial court has a great deal of discretion in determining the manner in which it divides marital property, and an appellate court will generally defer to a trial court's decision regarding what is equitable unless that decision is inconsistent with the factors set out in Tenn. Code Ann. § 36-4-121(c) or the evidence preponderates against the decision. *Jolly*, 130 S.W.3d at 785-86. Appellate courts "'are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures.'" *Larsen-Ball v. Ball,* 301 S.W.3d 228, 234 (Tenn. 2010) (quoting *Keyt v. Keyt,* 244 S.W.3d 321, 327 (Tenn. 2007)); *see Owens,* 241 S.W.3d at 490 ("[I]t is not our role to tweak the manner in which a trial court has divided the marital property.").

The division of marital property "is not a mechanical process" but rather is guided

---

[8] The trial court also addressed Wife's credibility, but found her dishonesty with the court related to adultery, not to financial matters.

by the factors in Tenn. Code Ann. § 36-4-121(c). *Kinard v. Kinard,* 986 S.W.2d 220, 230 (Tenn. Ct. App. 1998). Tennessee Code Annotated § 36-4-121(c) requires a trial court to consider the following factors in making its division of marital property:

(1) The duration of the marriage;
(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
(4) The relative ability of each party for future acquisitions of capital assets and income;
(5)(A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
(B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed.
(6) The value of the separate property of each party;
(7) The estate of each party at the time of the marriage;
(8) The economic circumstances of each party at the time the division of property is to become effective;
(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;
(10) The amount of social security benefits available to each spouse; and
(11) Such other factors as are necessary to consider the equities between the parties.

In this case, the trial court used the exact percentages it identified from the parties' tax treatment of the debentures to make its decision about how to divide the debentures between the parties:

Having called it marital property and it's possible I might have more of a legal requirement to split the baby 50/50 or the marital estate 50/50 than what I'm going to do, but I'm going to go ahead and count into the equities the fact that—and I'm going to hold Mr. Parker to his tax returns that he filed and say that the amount of money that can be identified as family

money in this matter—and I understand that he could own it separately and hold it in his name alone and pay taxes on it. I understand that. But if you take those tax returns, . . . and the way he treated it at that time, we're talking about Norma Parker only paying less than 35 percent tax or tax on less than 35 percent of the total interest from those debentures.

Now, at that time in 2012, when she—when they filed those taxes, I think that she died that year, but those taxes would have to include and he gave— in 2012 he gave more, but in 2011 when that tax return was filed, that would include all of Virgil Parker's money that passed to her because she was alive and it would include all of her property, too. So that's all of their money that could possibly be attributed to them and I'm going to divide the remainder of it, which is 71 percent or more than 71 percent 50/50.

Now, where does that leave us in the math of this situation is the way I calculated it—let's see, here's the way I calculate it. If there is $2,605,881.20 in debentures and 71 percent of that is what I'm going to divide 50/50, then that gives each party 35-and-a-half percent of all the debentures and they're entitled to that much interest off of all the debentures. Although, I'm going to order that he pay her 50/50 for all the money he took out during the pendency of this action of either debenture. There's two debentures. Now, some of it went to her through the checking account and then he closed the checking account, I believe, at some point. Anyway, it's that $13,000 that he's got to pay her immediately within ten days of this ruling today, her half of that money that he took.

But when I divide—when I take 71 percent of $2,605,881.20, I come out with $1,824,116.80. Her half would be $912,058.40 as would his. Now, of course, I'm awarding him his separate estate, which is pretty easily identifiable on—even on wife's proposed distribution of property.

Both parties' experts testified that the allocation of interest from debentures among family members is a valid strategy to minimize the family's overall tax liability and has no bearing on the ownership of the corpus of the debenture. In Tennessee, as in other states, the filing of a joint tax return does not change the property rights between taxpayers. *See Luttrell v. Luttrell*, No. W2012-02279-COA-R3-CV, 2014 WL 298845, at *5 (Tenn. Ct. App. Jan. 28, 2014); *Estate of Hunt v. Hunt*, 389 S.W.3d 755, 761-62 (Tenn. Ct. App. 2012).

The trial court did not consider the factors set out in Tenn. Code Ann. § 36-4-121(c) as it was required by statute to do. We must conclude, therefore, that the trial court erred in failing to consider these factors and in placing improper reliance upon the

- 13 -

parties' tax treatment of the interest from the debentures in dividing the debentures between Husband and Wife. We, therefore, remand to give the trial court an opportunity to make a proper equitable determination concerning the division of the debentures, all of which have been determined to be marital property, upon consideration of the factors enumerated in Tenn. Code Ann. § 36-4-121(c).

Temporary alimony

Husband also argues that the trial court erred in awarding alimony in this case. In the division of marital assets, Wife was awarded $450,000 out of the Pioneer Credit debentures, which would have resulted in income to her of $4,500 per month as long as the money remained at Pioneer Credit. After the trial court entered its final judgment, Husband filed a motion to stay execution on the judgment pending appeal, and the motion was ultimately granted by this Court. As a result, Wife could not access the funds held by Pioneer Credit. She therefore filed a motion seeking an award of temporary alimony. In an order entered on June 23, 2015, the trial court granted Wife temporary alimony in the amount of $3,000 per month until further order of the court, retroactive to the date of the divorce.

A trial court has broad discretion to determine the need for spousal support, as well as the appropriate nature, amount, and duration of that support. Tenn. Code Ann. § 36-5-121; *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004). As our Supreme Court has discussed, a trial court's decision regarding alimony is "factually driven and involves the careful balancing of many factors." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011) (footnote omitted). Under the deferential abuse of discretion standard, "the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision." *Id.* at 105-06.

Tennessee law recognizes four different types of alimony that may be appropriate in combination or alone: rehabilitative alimony, alimony in futuro (also known as periodic alimony), transitional alimony, and alimony in solido (also known as lump sum alimony). Tenn. Code Ann. § 36-5-121(d)(1). Tennessee Code Annotated section 36-5-121(i) instructs the court to consider all relevant factors in determining whether spousal support is appropriate and in determining the nature, amount, length of term, and manner of payment, including the following:

> (1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
> (2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such

party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

The single most important consideration for the court in awarding alimony is the need of the disadvantaged spouse seeking support, followed by the ability of the obligor spouse to pay support. *Bratton*, 136 S.W.3d at 604; *Oakes v. Oakes*, 235 S.W.3d 152, 160 (Tenn. Ct. App. 2007).

Husband argues that the trial court erred in awarding temporary alimony in this case because Wife failed to establish her need or Husband's ability to pay. We disagree.

On the issue of need, Wife submitted proof that her income was $2,711 a month. Although she did not submit a formal statement of her expenses, Wife testified that she was living frugally and was unable to pay the expenses associated with maintaining the $1.1 million marital home she had been awarded. She had recently obtained a quote of $6,000 to repair the heating and air conditioning unit. There was pool equipment that needed to be replaced; the piece she needed cost nearly one thousand dollars. There were rock walls on the property that had fallen down and other basic maintenance issues that needed attention.

Wife further testified that her car needed some repairs and new tires, but she was doing without those things. Furthermore, she did not get her teeth cleaned and avoided going to the doctor unless absolutely necessary. Wife testified that she had not taken a

vacation in three years, even for a day, whereas Husband had been on multiple trips since the divorce: a trip to Israel, a cruise, and a trip to New York City.

Husband argues that Wife could take out a loan or line of credit on the marital home to support herself. Husband cites no authority, however, for the proposition that a spouse should be forced to go into debt in order to support herself pending the resolution of an appeal.

In determining that Wife had a need for alimony, the trial court focused upon the lifestyle of the parties during the marriage and the intentional actions of Husband:

> [Wife] doesn't have $450,000 to use that the court awarded. You-all, both of you, have a lifestyle that's been demonstrated before the court. And Mr. Larramore [Wife's counsel] [is] prepared to put on proof that in order to keep that lifestyle I should be able to award her some monetary alimony from you that will compensate her and let her stay—instead of being impoverished by your conduct, at least even up the field a little bit. I think it's been egregious. What you've done is egregious. It's not just a small— and it's not just a slight oversight, unintentional. You've done what you've done, I think, with your ability to understand finances. And being a lawyer, you've known exactly what you did and the consequences it would hold for your spouse, your former spouse.

The trial court attached little credence to Husband's argument that he lacked the ability to pay alimony. When Husband complained that Pioneer Credit had ceased making interest payments, the trial court stated:

> THE COURT: Well, you say they [the interest payments] stopped, and saying that those debentures weren't any good. I don't know that your testimony is going to be able to establish that because I just can't believe what you tell me. . . . My recollection is, is that before that ever happened and the sale of the company occurred, you already had cashed out those interest-bearing accounts. That's what I recall.
>
> MR. PARKER: That's not correct, Your Honor, in this regard. In the final decree of the court, the court awarded—made various awards to the plaintiff, including, but not limited to the cash distribution from the Pioneer Credit Trust debenture.
>
> THE COURT: Yeah, but did you not—didn't you go over there and get rid of those debentures and you bought a farm and you did other things, and you basically have put yourself in a no cash-flow situation far—long before the company sold. And again, I'm not going to credit that they wouldn't have had to honor some of those debentures. Without some

independent proof, I'm not going to accept that from you.

MR. PARKER: Well, Mr. Parker did nothing to dilute the debenture below the $450,000 award. And the final decree of this court—

THE COURT: Yes, but you took the income-producing—here's what you did, and I'm very well familiar with what you did. You tied up her $450,000 and then you got access to yours and did anything you wanted to do with it and you've done it. But you can't impoverish yourself and then come in here today and say, I don't have any income-producing property because I don't have any now. Look what's happened. You got yourself in a pretty bad spot as far as if this Court of Appeals happens to decide that she's entitled to more than I gave her in property division, because you've already done away with the liquid asset, the debenture. So that's the way I recall it. . . .

MR. PARKER: Well, Your Honor, I would respectfully disagree. There was many, many discussions during the proceedings regarding the acquisition of the farm. And this court was aware that that was being contemplated, there was discussions with counsel, and we were trying to get that done because both the father and the son wanted the property. Because of the cost of the property, notwithstanding the mortgage, which is $800,000, it took the bulk of the Pioneer debenture to pay down to purchase the property.

THE COURT: Okay. So what I said is true, you did take the debentures and you bought the farm. And now you're saying you don't have any money.
. . .

MR. PARKER: . . . There have been some cash sales that have come from the farm. It's not a quick operation, but we are making money and we are growing. . . . Mr. Parker's intention is very clear, he wants to preserve the farm, he does not want to lose the farm. To Your Honor's point, if there is an adverse decision from the Court of Appeals, it will force the defendant into a Chapter 11 reorganization. No question about that.

THE COURT: Well, you put yourself there because you took the money you got, you dealt with it as freely as you wanted to, did whatever you wanted to with it, and tied up her amount. That's exactly what happened. . . . [W]hat you said doesn't change anything about the equation. That's why the court knew that if, in fact, this money was going to be tied up longer, the court would consider an application for alimony because I know these facts. I know what you've done in this case, Mr. Parker, and you are now going to have to live with what you've done.

Later in the hearing, the trial court found that Husband had the ability to earn at least $120,000 per year. The court specifically did not credit Husband's testimony that

he had to use the debentures to make the farm purchase.[9]

In light of all of the evidence presented and the trial court's findings, we cannot say that the trial court abused its discretion in awarding temporary alimony to Wife.

Attorney fees

The final issue we must address is attorney fees. Husband takes issue with an award of attorney fees included in a June 23, 2015 order in which the trial court ruled on several matters, including a February 2015 petition Wife filed for attorney fees and a default award of sanctions.

In this February 2015 petition, Wife sets out the following provisions included in the final decree and a subsequent court order that required actions on the part of Husband:

1.  Defendant was to execute and return the quit claim deed to the marital residence.
2. Defendant was to make a child support arrearage payment of $2,392.
3. Defendant was to make current child support payments of $299 per month.
4. Each party was to sign such documents as are required to convey one-half of a party's IRA account to the other party.
5. Defendant was to assume Garrett's phone line.

According to Wife's petition, Husband "failed to meet his obligations," and she eventually had to seek relief through a motion for contempt and for sanctions filed on August 16, 2014. In her motion, Wife requested her attorney fees necessitated by Husband's refusal to comply with the court's orders. Wife argued that Husband had "established a pattern of refusal to comply with Court Orders without further Court action by [Wife]," and she pointed out that she also had to file motions for contempt in March 2013, August 2013, and November 2013 due to Husband's refusal to comply with the trial court's orders. Each time, "[Husband] was ordered to immediately rectify his default."

In a September 2014 order, the trial court ordered Husband to execute a quit claim deed; and to pay Wife $3,338.05 in child support, representing an arrearage of $2,392.00,

---

[9] This Court grants Wife's unopposed Motion for Consideration of Post-Judgment Facts. In the bankruptcy filings submitted by Wife for this Court's consideration, Husband stated that he had monthly income of $4000 per month during the period from January through December 2015. Husband did not testify to this income at the hearing on temporary alimony in June 2015.

current child support of $897, and interest of $49.05. Furthermore, the court ordered that Wife would assume Garrett's phone number and that Husband would give specific instructions to Pioneer Credit regarding the division of the debentures. Thus, the trial court addressed each of the items listed in Wife's petition for contempt and for sanctions. The trial court further provided that Wife "shall be awarded a reasonable fee caused by the necessity of her motions." Her attorney was instructed to file an appropriate petition and affidavit.

Husband filed a motion to reconsider objecting to the portions of the trial court's September 9, 2014 order pertaining to the Pioneer Credit debentures. He subsequently filed other motions. On October 6, 2014, Wife filed a motion for sanctions based on Husband's alleged "continuing obstructionist behavior" and recent frivolous filings seeking to relitigate issues resolved by the trial court in the divorce. She requested that the court sanction Husband "by an award of $5000" to her as well as her attorney fees. On December 11, 2014, the trial court ruled upon Wife's motion for sanctions as well as multiple motions filed by Husband. Wife's motion for sanctions was held in abeyance pending Husband's response. On February 19, 2015, Wife filed the Petition for Attorney Fees and for a Default Award of Sanctions at issue here. She requested that the trial court award her attorney fees of $6,778.75 and sanctions in the amount of $5,000.

The American Rule as to attorney fees establishes that "litigants pay their own attorney's fees absent a statute or an agreement providing otherwise." *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 194 (Tenn. 2000). In cases involving child support or custody, Tenn. Code Ann. § 36-5-103(c) authorizes a trial court to award attorney fees to a spouse who must go back to court to enforce a decree:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

"In the context of civil contempt, an award of attorney's fees is appropriate because it serves to compensate the prevailing party for the expenses incurred to obtain compliance with a court order." *Cremeens v. Cremeens*, No. M2014-01186-COA-R3-CV, 2015 WL 4511921, at *7 (Tenn. Ct. App. July 24, 2015). Thus, "a court may award attorney's fees as a sanction for a properly made finding of contempt." *Battleson v. Battleson*, 223 S.W.3d 278, 287 (Tenn. Ct. App. 2006). The award of attorney fees is within the trial

court's discretion and will not be overturned absent an abuse of discretion. *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011).

The trial court ruled, in its June 23, 2015 order, that Wife's petition for attorney fees and for a default award of sanctions was granted in part and denied in part. The trial court awarded Wife her attorney fees in the amount of $6,778.75. The court found that this attorney fee was "reasonable and required because of Defendant's obstructionist behavior in this case." Wife's request for further sanctions was denied. As Husband points out, however, the requested amount includes fees for time spent responding to Husband's motion for a stay of execution on the judgment. This motion was related to the parties' access to the debentures, not to alimony or child support. Moreover, although Husband's motion was denied by the trial court, this Court ultimately granted Husband's motion for a stay. We must conclude that Wife should not receive attorney fees for the time her attorney spent responding to the motion for a stay.

We find no abuse of discretion with respect to the trial court's award of attorney fees with the exception of those fees related to the motion for a stay.

CONCLUSION

The judgment of the trial court is affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion. In particular, the trial court is to divide the debentures in accordance with the statutory factors and recalculate the attorney fees without including work done regarding the motion for a stay. Costs of appeal are assessed against the appellant, Virgil Duane Parker, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE